**In the Matter of the CARE AND TREATMENT OF Andre COKES, Appellant.**

**No. WD 60062.**

Missouri Court of Appeals,
Western District.

March 18, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 2003.

Application for Transfer Denied
July 1, 2003.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl Caponegro Nield, Asst. Atty. Gen., Jefferson City, MO, for the State of Missouri.

Nancy L. Vincent and David Hemingway, Assistant Public Defenders, St. Louis, MO, Emmett D. Queener, Assistant Public Defender, Columbia, MO, for Appellant.

Before EDWIN H. SMITH, P.J., and SMART and HARDWICK, JJ.

EDWIN H. SMITH, Presiding Judge.

Andre Cokes appeals from the judgment of the Probate Division of the Circuit Court of Jackson County committing him to the custody of the Missouri Department of Mental Health (DMH), pursuant to the Sexually Violent Predator Act (SVP Act), §§ 632.480–.513,[1] after a jury had found, beyond a reasonable doubt, that he was a "sexually violent predator" (SVP), as defined in § 632.480(5) of the SVP Act.

The appellant raises three points on appeal. In Point I, he claims that the trial court erred in overruling his motion for a directed verdict because the State did not make a submissible case as to his being a SVP subject to commitment under the SVP Act in that there was no evidence from which the jury could find as required, beyond a reasonable doubt, that he suffered from a mental abnormality, as defined in § 632.480(2), that made it more likely than not that he would engage in predatory acts of sexual violence if not confined. In Point II, he claims that the trial court erred in overruling his motion for a directed verdict because the State did not make a submissible case as to his being a SVP subject to commitment under the SVP Act in that there was no evidence from which the jury could find as required, beyond a reasonable doubt, that he had serious difficulty in controlling his sexually violent behavior. In Point III, he claims that the trial court erred in giving Instruction No. 6, the verdict-directing instruction, because it failed to require the State, as a matter of due process, to prove all of the elements of its case for commitment under the SVP Act in that the instruction did not require a finding that the appellant has serious difficulty in controlling his sexually violent behavior.

We reverse and remand.

### Facts

On July 28, 1999, pursuant to § 632.486, the State filed in the Probate Division of the Circuit Court of Jackson County, a petition, seeking to commit the appellant to the custody of the DMH, alleging that he was a SVP, as defined in § 632.480(5). On July 29, 1999, the appellant filed a motion to dismiss for failure to state a cause of action on which the requested relief could be granted, alleging that the petition did not plead facts establishing that he was suffering from a mental abnor-

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

mality which made him more likely than not to engage in predatory acts of sexual violence if released. On August 3, 1999, the State filed an amended petition. In the amended petition, the State alleged that, on August 6, 1999, the appellant was scheduled to be released from the custody of the Missouri Department of Corrections, where he had been serving a sentence for forcible rape and to which he had pled guilty in the Circuit Court of Jackson County on June 3, 1985. The petition further alleged that the appellant suffered from the mental abnormality of paraphilia not otherwise specified (NOS), which caused him more likely than not to engage in predatory acts of sexual violence. The petition also alleged that on November 7, 1983, the appellant had entered an Alford plea to one count of forcible rape, and that, on June 25, 1979, he had also pled guilty to attempted sodomy and second-degree burglary.

On September 3, 1999, pursuant to § 632.489.2, the trial court held a probable cause hearing on the issue of the appellant's alleged status as a SVP. On September 20, 1999, the trial court entered its findings and order determining that there was probable cause to believe that the appellant was a SVP within the meaning of § 632.480(5), and ordering, pursuant to § 632.489.4, that the DMH have the appellant examined by a psychiatrist or psychologist to determine whether he suffered from a mental abnormality, and if he did, whether it made him more likely than not to engage in predatory acts of sexual violence. Thereafter, the appellant was evaluated by Dr. Steven A. Mandracchia, a forensic psychologist and Director of Forensic Services at Western Missouri Mental Health Center. On November 23, 1999, the State filed with the trial court Dr. Mandracchia's written evaluation of the appellant, which concluded that:

1. In the opinion of the examiner, [the appellant] suffers from mental abnormality in the form of Antisocial Personality Disorder; Poly–Substance Abuse/Dependence, Sustained Full Remission In a Controlled Environment; and Paraphilia, Not Otherwise Specified.
2. In the opinion of the examiner, [the appellant's] mental abnormality makes him more likely than not to engage in predatory acts of sexual violence.

Dr. Mandracchia's written evaluation was never admitted at trial.

On December 4, 2000, pursuant to § 632.492, the State's SVP petition proceeded to a jury trial. Dr. Mandracchia was called as a witness for the State and testified about his examination and diagnosis of the appellant. Dr. Mandracchia explained that, in evaluating the appellant, he reviewed psychiatric, police, and prison records; interviewed the appellant; and relied upon two actuarial instruments, the Rapid Risk Assessment for Sexual Offender Recidivism (RRASOR) and the Minnesota Sex Offender Screening Tool (MnSOST–R). He further noted that the RRASOR and the MnSOST–R are used by a majority of forensic experts in the state for this type of evaluation. Dr. Mandracchia concluded that the appellant was suffering from three mental abnormalities: paraphilia, substance abuse and dependency, and antisocial personality disorder, and that he was likely to "sexually reoffend."

The appellant made an oral motion for a directed verdict of acquittal at the close of the State's evidence, which was overruled. At the close of all the evidence, the appellant made another motion for a directed verdict of acquittal, which was also overruled. After deliberating, the jury returned with its verdict declaring, beyond a reasonable doubt, that the appellant was a SVP, as defined in § 632.480(5), requiring confinement in the DMH.

The appellant filed a motion for new trial on January 9, 2001, contending that the trial court erred in denying his motion for a directed verdict, alleging that the State failed to make a submissible case. The motion was overruled. Pursuant to § 632.495, on June 19, 2001, by leave of court, the appellant filed out of time his notice of appeal.

### Standard of Review

 In reviewing the trial court's denial of the appellant's motion for a directed verdict, we review to determine if the State made a submissible case. *Parra v. Bldg. Erection Servs.*, 982 S.W.2d 278, 282 (Mo.App.1998). In determining whether the State made a submissible case, we are required to view the evidence and all reasonable inferences therefrom in the light most favorable to the State's case and disregard all evidence to the contrary. *Id.* We will not, however, supply missing evidence or give the plaintiff the benefit of unreasonable, speculative, or forced inferences. *Steward v. Goetz*, 945 S.W.2d 520, 528 (Mo.App.1997). "The evidence and inferences must establish every element and not leave any issue to speculation." *Id.* (citation omitted).

### I.

In Point I, the appellant claims that the trial court erred in overruling his motion for a directed verdict because the State did not make a submissible case as to his being a SVP subject to commitment under the SVP Act. Specifically, he claims that there was no evidence from which the jury could find as required, beyond a reasonable doubt, that he suffered from a mental abnormality, as defined in § 632.480(2), that made it more likely than not that he would engage in predatory acts of sexual violence if not confined.

Pursuant to § 632.492, the attorney general requested a jury trial to determine whether the appellant was a SVP, as defined in § 632.480(5), subject to commitment. That section defines a SVP as:

[A]ny person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility and who:

(a) Has pled guilty or been found guilty, or been found not guilty by reason of mental diseases or defect pursuant to section 552.030, RSMo, of a sexually violent offense; or

(b) Has been committed as a criminal sexual psychopath pursuant to section 632.475, RSMo, and statutes in effect before August 13, 1980.

§ 632.480(5). The version of § 632.480(3) which was in effect at the time of the appellant's trial defined "predatory" acts as "acts directed towards strangers or individuals with whom relationships have been established or promoted for the primary purpose of victimization."[2] The State concedes, as the appellant claims, that in order to make a submissible case for commitment under the SVP Act, § 632.495 required it to prove beyond a reasonable doubt that the appellant was a SVP, as defined in § 632.480(5).

As to the appellant being a SVP, as defined in § 632.480(5), and subject to commitment under the SVP Act, the State alleged in its petition that the appellant was suffering from a mental abnormality, paraphilia NOS, which made him more likely than not to engage in predatory acts of sexual violence if released. Based on

---

**2.** The appellant's trial occurred in December of 2000. In 2001, the statutory definition of "predatory" in § 632.480(3) was changed to

"acts directed towards individuals, including family members, for the primary purposes of victimization."

the allegations of the State's petition, the appellant contends that the State, in order to make a submissible case for commitment, was required, but failed to establish: (1) that he suffered from the mental abnormality alleged in the petition, paraphilia NOS; and (2) that his paraphilia NOS made it more likely than not that he would engage in predatory acts of sexual violence if not confined. The State disputes the fact that it did not carry its burden of proof as claimed by the appellant, contending that the testimony of Dr. Mandracchia was sufficient for the jury to find that the appellant not only suffered from paraphilia NOS, but that as a result, he was more likely than not to engage in predatory acts of sexual violence if not confined, requiring his commitment to the DMH under the SVP Act.

As noted in the facts, Dr. Mandracchia testified that, in evaluating the appellant, he reviewed psychiatric, police, and prison records; interviewed the appellant; and administered two actuarial instruments, the RRASOR and the MnSOST–R, which he described as being used by a majority of forensic experts in the state for this type of evaluation. As to the appellant's scores on the RRASOR and MnSOST–R, Dr. Mandracchia testified that the appellant's score on the RRASOR corresponded to recidivism rates of 32% to 48% over five and ten years, respectively, and that his score on the MnSOST–R placed him in a category of people who reoffended at a rate of 92%. Dr. Mandracchia also described a number of other factors which he considered in his evaluation of the appellant. In that regard, he noted that the appellant's history indicated that he had difficulty dealing with authority; that he had failed to complete numerous sexual offender treatment programs; and that he lacked insight into his past and present circumstances in that he did not accept responsibility for his past offenses and was

unable to identify "what was going on with him either in general or at the time that may lead to these things." Dr. Mandracchia also found that the appellant had limited remorse for his past offenses, and that there were indications of anger control problems.

As to his expert opinion on whether the appellant suffered from a mental abnormality, for purposes of the SVP Act, the record reflects that Dr. Mandracchia testified on direct examination by the State as follows:

Q. And I guess I should say, does Mr. Cokes suffer from a mental abnormality?

A. Yes, I believe he does.

Q. Can you tell the jury what it is you think he suffers from that equals a mental abnormality?

A. I believe that there are three quote/unquote disorders that constitute and/or a mental abnormality. One is a paraphilia, one is substance abuse and dependency, and the other is antisocial personality disorder.

Q. Did you find in the three items you've listed that Mr. Cokes suffers from each of those three?

A. Yes, I believe he suffers from each of those three.

Q. Did you try to make a determination as a result of this mental abnormality and looking at your actuarial measures, did you try to determine whether or not it was more likely than not Mr. Cokes would sexually reoffend?

A. Yes, I did.

Q. What is your determination?

A. I determined that in terms of probability it is more likely than not that he will reoffend.

As noted, *supra,* the appellant contends that the State's proof was deficient in that

it failed to prove: (1) that he suffered from the mental abnormality alleged in the petition, paraphilia NOS; and (2) that his paraphilia NOS made it more likely than not that he would engage in predatory acts of sexual violence if not confined. In that regard, while we find that Dr. Mandracchia's testimony was sufficient to establish that the appellant was suffering from paraphilia NOS making it more likely than not that he would "sexually reoffend," there remains the question of whether it was sufficient to establish, as required by § 632.480(5), that he would reoffend in a predatory and violent way. In his testimony, Dr. Mandracchia never renders an opinion to that effect. Nevertheless, the State appears to argue that his testimony concerning the appellant's raw scores on the two actuarial instruments employed in the doctor's evaluation, the RRASOR and the MnSOST–R, was sufficient to meet its burden of proving that the appellant would sexually reoffend in a predatory and violent manner.

■ To make a submissible case for a SVP commitment under § 632.495, the State was required to present substantial evidence to establish each and every element of its petition. *See Spring v. Kansas City Area Transp. Auth.*, 873 S.W.2d 224, 225 (Mo. *banc* 1994) (stating that plaintiff must present substantial evidence of each element of a claim to make a submissible case). Substantial evidence is competent evidence from which the trier of fact can reasonably decide the case. *Mathis v. Jones Store Co.*, 952 S.W.2d 360, 366 (Mo. App.1997). A verdict cannot rest upon guesswork, conjecture, or speculation beyond inferences that can reasonably decide the case. *Id.* Thus, in determining whether a submissible case was made by the plaintiff, missing evidence will not be supplied nor will the plaintiff be given the benefit of unreasonable, speculative, or forced inferences. *Id.*

■ Here, the State, in contending that Dr. Mandracchia's testimony was sufficient to make a submissible case for civil commitment of the appellant under the SVP Act, is necessarily arguing that the jury could reasonably infer from his testimony concerning the RRASOR and MnSOST–R raw scores that he was not only more likely than not to sexually reoffend, but to so offend in a predatory and violent manner, as required by the definition of a SVP in § 632.480(5). The State's argument, however, defies our standard governing when expert testimony is required at trial in order to allow a jury to determine disputed issues vital to rendering its verdict. That standard contemplates that there will be issues at trial which must be decided by the jury, but cannot be without expert testimony because they are beyond the understanding of laypersons. § 490.065; *Guzman v. Hanson*, 988 S.W.2d 550, 554–55 (Mo.App.1999). Expert testimony is necessary "[w]hen jurors, for want of experience or knowledge of the subject under inquiry, are incapable of reaching an intelligent opinion without outside aid[.]" *Housman v. Fiddyment*, 421 S.W.2d 284, 289 (Mo. *banc* 1967); *Hewitt v. City of Kansas City*, 761 S.W.2d 679, 682 (Mo. App.1988).

■ It goes without saying that a jury of laypersons would lack sufficient knowledge and understanding to draw any reasonable conclusions solely from the raw scores of testing instruments employed by forensic experts, in this case the RRASOR and MnSOST–R raw scores. In that regard, the record reflects that Dr. Mandracchia's testimony lacked any detail that would have imparted to the jury the necessary knowledge to allow it to reasonably infer from the RRASOR and MnSOST–R raw scores that the appellant would not only sexually reoffend, but would do so in

a violent and predatory manner. And, while the record would also indicate that Dr. Mandracchia's written report as to his evaluation of the appellant did include his opinion that the appellant's "mental abnormality makes him more likely than not to engage in predatory acts of sexual violence," that report was not introduced at trial. Matters outside the record are not considered in the course of appellate review. *In re B.W.B.,* 73 S.W.3d 894, 894–95 (Mo.App.2002). Thus, the State's proof was deficient as to whether his paraphilia NOS made it more likely than not that he would engage in predatory acts of sexual violence, such that the trial court erred in not granting his motion for a directed verdict.

The fact that the State failed to make a submissible case on the ground that it failed to establish that the appellant was more likely than not to engage in predatory acts of sexual violence does not entitle the appellant to the relief he seeks in this point, an outright reversal. That is so in that a SVP commitment under §§ 632.480—.513 is deemed a civil proceeding, *Kansas v. Hendricks,* 521 U.S. 346, 361–69, 117 S.Ct. 2072, 2081–85, 138 L.Ed.2d 501, 514–19 (1997), such that our disposition in this case would be controlled by the Missouri Supreme Court's decision in *State ex rel. Div. of Family Servs. v. Standridge,* 676 S.W.2d 513 (Mo. *banc* 1984).

In *Standridge,* the Division of Family Services (DFS) brought suit to recover from the defendant Aid to Families with Dependent Children (AFDC) funds, having acquired by assignment from the defendant's wife her common law right to recover from the father of her minor children the cost of necessaries she furnished to their children. *Id.* at 514–15. The defendant claimed on appeal that the trial court erred in entering judgment for the DFS on

its suit to recover the AFDC funds because the DFS had failed to make a submissible case in that it failed to prove, as required, that the payments in question were attributable to any fault or misconduct of the defendant. *Id.* at 515. While the Court agreed that the DFS had failed to make a submissible case, it concluded that the defendant was not entitled to an outright reversal in that the necessary proof was readily available, but was not forthcoming solely due to counsel's failure to ask the appropriate questions at trial such that the furtherance of justice required reversal and remand for a new trial. In so holding, the Court stated:

> The furtherance of justice requires a case shall not be reversed without remanding unless the appellate court is convinced the facts are such that a recovery cannot be had. It is a settled practice of appellate procedure that a case should not be reversed for failure of proof without remanding, unless the record indicates that the available essential evidence has been fully presented, and that no recovery can be had in any event. This rule is pertinent where the record indicates that other and additional evidence might be adduced in support of plaintiff's action and enable him to make a submissible case.

> Because the evidence does not establish that plaintiff could not make a submissible case against defendant if the evidence were fully developed, we decline to reverse and direct the entry of a verdict for defendant. It is appropriate to remand the case for a new trial in which the possibility for a recovery by the plaintiff will remain if sufficient evidence is produced.

*Id.* at 517 (citations omitted). *See also Affiliated Acceptance Corp. v. Boggs,* 917 S.W.2d 652, 656 (Mo.App.1996); *Moss v. Nat'l Super Mkts., Inc.,* 781 S.W.2d 784,

786 (Mo. *banc* 1989) (holding that the general rule is that a plaintiff's verdict should be reversed without remand for a new trial only if the appellate court is convinced that the plaintiff could not make a submissible case on retrial).

 As noted, *supra*, Dr. Mandracchia's written evaluation, which was not offered at trial, indicated that the appellant's "mental abnormality makes him more likely than not to engage in predatory acts of sexual violence." Thus, the record indicates that the State could have presented sufficient evidence to allow the jury to reasonably infer that the appellant was more likely than not to engage in predatory acts of sexual violence had the State's counsel simply asked Dr. Mandracchia whether, in his expert opinion, the appellant's likelihood of sexually reoffending would occur in a violent and predatory manner. As such, the appellant would not be entitled to an outright reversal on the error found in this point, but remand of his case for a new trial. *Standridge*, 676 S.W.2d at 517.

## II.

In Point II, the appellant claims that the trial court erred in overruling his motion for a directed verdict because the State did not make a submissible case as to his being a SVP subject to commitment under the SVP Act in that there was no evidence from which the jury could find as required, beyond a reasonable doubt, that he had serious difficulty in controlling his sexually violent behavior. As to that alleged error, the appellant requests that we reverse outright or, in the alternative, reverse and remand for a new trial. The State concedes that it did not prove that the appellant had serious difficulty in controlling his sexually violent behavior. However, it contends that the appellant is not entitled to an outright reversal as a result, in that,

at the time of trial, the controlling law did not require it to prove that fact. *See Shaffer v. Sears, Roebuck & Co.*, 689 S.W.2d 683, 687 (Mo.App.1985) (holding that a plaintiff cannot be denied a new trial for failing to establish sufficient proof to meet a standard which, at the time of trial, did not exist). In that regard, the State contends that it was not until *Thomas v. State*, 74 S.W.3d 789 (Mo. *banc* 2002) was decided, which was decided after the appellant's case was tried, that the law required it to prove a defendant's serious difficulty in controlling his or her sexually violent behavior in order to commit under the SVP Act. The appellant counters that under *Hendricks*, which was decided prior to the appellant's case went to trial, the State's burden of proof did include the disputed proof element. Thus, as framed by the parties, the issue we must decide in this point is whether the appellant is entitled to an outright reversal or a reversal and remand for a new trial, the resolution of which turns on whether at the time of trial the controlling law required the State to prove, beyond a reasonable doubt, that the appellant had serious difficulty controlling his sexually violent behavior.

In contending that *Hendricks* required the State to prove serious difficulty in controlling sexually violent behavior, the appellant quotes that portion of the opinion, which reads:

A finding of dangerousness, standing alone, is ordinarily not a sufficient ground upon which to justify indefinite involuntary commitment. We have sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a "mental illness" or "mental abnormality." These added statutory requirements serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their

control. The Kansas Act is plainly of a kind with these other civil commitment statutes: It requires a finding of future dangerousness, and then links that finding to the existence of a "mental abnormality" or "personality disorder" that makes it difficult, if not impossible, for the person to control his dangerous behavior. Kan. Stat. Ann. § 59–29a02(b) (1994). The precommitment requirement of a "mental abnormality" or "personality disorder" is consistent with the requirements of these other statutes that we have upheld in that it narrows the class of persons eligible for confinement to those who are unable to control their dangerousness.

521 U.S. at 358, 117 S.Ct. at 2080, 138 L.Ed.2d at 512–13. While the quoted language would arguably support the appellant's position, the appellant, in contending as he does, ignores the fact that in the wake of *Hendricks*, the state which addressed the issue could not agree on whether *Hendricks* did, in fact, require proof of a volitional impairment on the part of a defendant. For example, in *In re Linehan*, 594 N.W.2d 867, 873 (Minn.1999), the Minnesota Supreme Court held that *Hendricks* did establish that proof of some lack of volitional control was necessary. On the other hand, the Arizona Supreme Court stated in *In re Leon G.*, 200 Ariz. 298, 26 P.3d 481, 484 (2001),[3] that it did not construe *Hendricks* to impose "volitional impairment" as a separate requirement for civil commitment statutes. In an accompanying footnote, the court cited civil commitment statutes from forty-eight states, including Missouri's § 632.005, which link dangerousness and mental abnormality, but do not require a separate finding of volitional impairment. 26 P.3d at 485 n. 2.

As far as Missouri is concerned, it was not until *Thomas* was decided in 2002 that the Missouri Supreme Court made it clear what the law was in this state with respect to the proof of serious difficulty in controlling sexually violent behavior. There, relying primarily on *Crane*, the Court held that civil commitment pursuant to Missouri's SVP Act requires a finding that the defendant have serious difficulty in controlling his sexually violent behavior. *Thomas*, 74 S.W.3d at 791–92. Given this history of the controlling law, the appellant is incorrect in asserting that the law in Missouri at the time of trial required the State to prove that he would have serious difficulty in controlling his sexually violent behavior. Thus, the State's failure to offer any evidence in that regard at trial or to show on appeal that such proof was available at trial, but not introduced, would not be a basis for reversing the jury trial's verdict outright.

### III.

In Point III, the appellant claims that the trial court erred in giving Instruction No. 6, the verdict-directing instruction, because it failed to require the State, as a matter of due process, to prove all of the elements of its case for commitment under the SVP Act in that the instruction did not require a finding that the appellant has serious difficulty in controlling his sexually violent behavior. As the State points out, Points II and III basically argue the same issue with respect to the appellant's being entitled to a new trial, which is the relief he seeks in this point. As it did with respect to the claim of error in Point II, the State concedes that the appellant is entitled to a new trial, as he requests in this point.

---

**3.** This decision was vacated by the U.S. Supreme Court in *Glick v. Arizona*, 535 U.S. 982, 122 S.Ct. 1535, 152 L.Ed.2d 461 (2002), and the case was remanded to the Arizona Supreme Court to be reconsidered in light of *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002).

## Conclusion

The judgment of the circuit court, finding the appellant to be a SVP and committing him to the custody of the DMH in accordance with the SVP Act, is reversed and the cause is remanded for a new trial in accordance with this opinion.

SMART and HARDWICK, JJ., concur.