In the Matter of the Care and Treatment of James BRADSHAW, a/k/a J.R. Bradshaw, a/k/a James A. Bradshaw, a/k/a James Arvin Bradshaw, Appellant,

v.

STATE of Missouri, Respondent.

No. SD 31637.

Missouri Court of Appeals, Southern District, Division One.

Aug. 22, 2012.

Erika R. Eliason, of Columbia, MO, for Appellant.

Chris Koster, Attorney General and Timothy A. Blackwell, Assistant Attorney General, of Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., J.

James A. Bradshaw ("Bradshaw") appeals the judgment of the Probate Division of the Circuit Court of Howell County ("the trial court") committing him to the custody of the Missouri Department of Mental Health ("MDMH"), pursuant to the Sexually Violent Predator Act ("SVP Act"), sections 632.480–.513, after a jury found he was a "sexually violent predator" ("SVP"), as defined in section 632.480(5).[1] We affirm the judgment of the trial court.

**Factual and Procedural Background**

Viewing the evidence in the light most favorable to the jury's verdict and disregarding all contrary evidence, *In re A.B.*, 334 S.W.3d 746, 752 (Mo.App. E.D.2011), the record reveals Bradshaw had a tumultuous and traumatic childhood in which he was removed from his poverty-stricken family and placed with a series of foster parents. As a result of this upbringing, by the age of fourteen Bradshaw's language skills were some four years behind his grade level, his math skills were at a second grade level, and he read at a first grade level. Based on his academic and developmental delays, Bradshaw qualified for services through the Division of Mental Retardation and Development Disabilities and was sent to "a state school." As an adult, he scored "in the low range of intelligence" on various tests but was not classified as mentally retarded.

Bradshaw's first reported sexual offense occurred when he grabbed a woman on a subway platform in New York City and exposed to her his genitals. This act resulted in charges of lewdness and harassment.[2] In 1981, at the age of twenty-two and after smoking marijuana, Bradshaw touched the breasts of his ten-year-old niece and she touched his penis. At the age of twenty-four, Bradshaw engaged in a relationship with a fourteen-year-old girl that he referred to as his "girlfriend." He took her across state lines with her consent, but was later charged with endangering the welfare of a child. While investigating that offense, authorities discovered Bradshaw had a relationship with a fifteen-year-old girl with whom he fathered a child. Bradshaw was then arrested in 1985, when he was twenty-six years old, for twice raping an eight-year-old female,

---

1. Unless otherwise stated, all statutory references are to RSMo 2000.

2. The record is unclear as to whether he was convicted of these offenses.

who was a distant relative. On one of those occasions, he threatened her with a paddle such that he was convicted of "rape with a weapon."

Bradshaw then apparently spent time in Kansas where he was convicted of the non-sexual offense of aggravated assault for which he spent time in prison. In 1995, Bradshaw "pick[ed] up three kids from a teen club" and took them "cruising" in his vehicle. He returned two of them to the club and took the third, a female, to a cemetery where he pinned her down on the hood of his car and raped her before taking her back to meet her friends. Bradshaw entered an *Alford*[3] plea in that case and was sentenced to ten years in the Missouri Department of Corrections ("the DOC") with execution of that sentence suspended and he was placed on probation. He then returned to Kansas, where he was still on probation for the aggravated assault conviction, and engaged in a sexual relationship with a mentally-challenged, fourteen-year-old girl. As the age of consent in Kansas is sixteen years old, Bradshaw was not charged with a separate crime for this relationship; however, his parole was revoked in both Kansas and Missouri.

In December 2006, just prior to his release from confinement, the State filed the present petition to involuntarily commit Bradshaw as an SVP.

A jury trial was held on July 20 and 21, 2011. The evidence revealed that due to his particular criminal history, Bradshaw had received treatment on and off throughout the years for his continued sexual offending. He completed the Missouri Sex Offender Treatment Program during his incarceration in 1987 only to re-offend thereafter. He again entered a treatment program in 2003, but did not complete the program due to "failure to apply the principles" by "not taking what [he was] learning and changing [his] behavior while in the program." He was terminated from that program for "not showing the motivation to change" and failing to make "progress." He offended thereafter. He later entered a third program, and although his therapists reported he was not truthful at the beginning of the program, he ultimately completed it.

The expert testimony of Dr. Richard Scott ("Dr. Scott"), a certified psychologist and forensic examiner with the MDMH, was offered at trial. He related that he conducted an SVP evaluation of Bradshaw by examining thousands of pages of Bradshaw's medical and criminal records, but did not perform a psychological interview with Bradshaw. "[T]o a reasonable degree of psychological certainty ...," Dr. Scott diagnosed Bradshaw with the following "conditions": "paraphilia, not otherwise specified hebephilia";[4] "cannabis abuse"; and "antisocial personality disorder." Dr. Scott related that while hebephilia is not listed in the "Diagnostic and Statistical Manual of Mental Disorders Fourth Edition Tex Revision" ("DSM")

3. An *Alford* plea allows a defendant to plead guilty to the charged crime and accept criminal penalty even if he is unwilling or unable to admit he committed the acts constituting the crime. *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

4. As explained in *Dunivan v. State*, 247 S.W.3d 77, 79 (Mo.App. S.D.2008),
  [p]araphilia is a sexual disorder characterized by recurrent urges or behaviors that involve the suffering or humiliation of another person, including having sex with children or other non-consenting adults. Paraphilia involving non-consenting persons falls into the general category of paraphilia NOS [Not Otherwise Specified], unlike other types of paraphilia, such as pedophilia, that are more specifically categorized.

and there is some discord within the psychological community as to its applicability, it is a disorder that is widely recognized and often characterized by a "strong sexual urge[ ] or sexual fantasies or sexual behavior with individuals who are pubescent but not of legal age, typically in the age range of 11 or 12 up to 15 or 16...." Dr. Scott related that hebephilia, while it has been applied to a "broad group" of characteristics, is a "sexual disorder[ ]" often involving "non-consenting partners including those that aren't of age to give consent...."[5] He reached this diagnosis for Bradshaw because the majority of Bradshaw's victims were within this age range and Bradshaw continued to re-offend after incarceration and treatment. Dr. Scott's antisocial personality disorder diagnosis was based on Bradshaw's deceitfulness in dealing with his victims and treatment providers, as well as his tendency to continually change his version of events even in the face of evidence to the contrary. Dr. Scott pointed out that Bradshaw has "serious difficulty controlling his behavior" as evidenced by the fact he is "driven toward [his] object of sexual interest" regardless of the fact he had been given "many opportunities to change his behavior through treatment" and incarceration. Dr. Scott related that the aforementioned mental abnormalities caused him to conclude Bradshaw was predisposed "to commit sexually violent offenses" based on his history of "repeated attempts and successful sexual contact with children[.]"

In calculating Bradshaw's risk of committing future acts of sexual violence, Dr. Scott used both the Static–99R and the Static–2002R actuarial instruments. As the records are unclear as to whether Bradshaw was convicted of the groping incident in New York, Dr. Scott performed each set of tests in two different ways—one considering that the New York offense resulted in a conviction, and one considering it did not. Dr. Scott related that if Bradshaw had not been convicted of the New York offense, on the Static–99R test he would have scored a 5, placing him in the "moderate-high risk" category which meant Bradshaw's risk of re-offending within five years was 15.2 to 24.9 percent and his risk of re-offending within ten years was 23.7 to 32.2 percent. He related if Bradshaw was, in fact, convicted of the New York offense, he would have scored an 8, which placed him in "the high risk" of re-offending category which meant Bradshaw's risk of re-offending within five years was 30.5 to 44.4 percent and his risk of reoffending within ten years was 38.1 to 54.8 percent. In scoring Bradshaw on the Static–2002R, without considering the New York offense, Dr. Scott found Bradshaw would have scored an 8, in "the moderate-high range," and his risk of re-offending within five years was 21.9 to 41.2 percent with his risk of re-offending within ten years at 28.8 to 56.2 percent. He related if Bradshaw was, in fact, convicted of the New York offense, he would have scored a 9, which was "in the high range" with the risk of re-offending being "somewhat higher" than that of the 8 range. In making these determinations, Dr. Scott also considered outside factors, including the antisocial personality disorder diagnosis, as well as the fact Bradshaw completed treatment yet continued to offend; his "preferred sexual partner is a deviant partner and one that involves some criminality"; he "suffered[ ] the chaos in his family, the lack of parenting ..."; and he exhibited "problematic behavior" influenced by violence and upheaval in his upbringing. Dr.

---

5. Other hebephilia characteristics have been stated to include sexual interest in "non-human objects, or the pain, suffering, or humiliation of oneself or one's partner...."

Scott concluded that it was his "opinion to a reasonable degree of certainty that [Bradshaw] is more likely than not to commit predatory acts of sexual violence if not confined, and that predisposition is due to the mental abnormality . . ." such that under the laws of the state of Missouri Bradshaw was an SVP.

Dr. Kimberly Weitl ("Dr. Weitl"), a licensed psychologist for the DOC, testified it was her job to screen sex offenders for the DOC and that she not only reviewed and evaluated all of Bradshaw's files, but also interviewed him. She testified she also diagnosed Bradshaw with "[p]araphilia not otherwise specified. The qualifier is hebephilia[,]" which she described as being "sexually attracted to non-consenting persons" such as "adolescent[s], usually between the ages of 13 and 16." She also related that hebephilia, while not mentioned in the DSM, is a "recognized diagnosis" of a legitimate mental abnormality that includes "many, many different types of paraphilia." She used the Static–99 and MnSOST–R actuarial instruments in her evaluation of Bradshaw and determined he scored 12 out of 13 possible points on the MnSOST–R, which means that 54 percent of people with that same score would be re-arrested for a sexual offense within six years. Dr. Weitl found Bradshaw's score on the Static–99 was "[m]oderate high" such that the likelihood he would re-offend within five years was 32 percent and the likelihood he would re-offend within ten years was "closer to 37 [percent]." Dr. Weitl further made it clear that such actuarial instruments necessarily underestimate a person's risk of re-offending in that they cannot take into account all known risk factors, nor do they attempt to predict likelihood of re-offense over an entire lifetime. Dr. Weitl related that of all the sex offenders she deals with, only 3 percent ultimately meet the SVP definition and that to a reasonable degree of psychologi-

cal certainty, Bradshaw met the criteria for an SVP.

Dr. Jarrod Steffan ("Dr. Steffan"), a licensed psychologist retained by Bradshaw "to give . . . a second opinion" testified at length about the detailed and varied history of the development of the hebephilia diagnosis within the paraphilia category of mental disorders, as well as the various studies conducted, methodology used in making such a diagnosis, and generalized uproar and disagreement about it within the psychological community. Dr. Steffan related it was his opinion that a diagnosis of paraphilia, not otherwise specified, was established to identify various deviant activities that clearly existed but were rarely observed, and it was his belief that a generalized attraction to pubescent females did not fall into that category. While admitting that paraphilia, not otherwise specified, is listed in the DSM, Dr. Steffan stated that hebephilia is "not a recognized mental disorder." He related that the essential features of basic paraphilia include "recurrent intense sexually arousing fantasies, sexual urges or behaviors generally involving: non-human objects[,] . . . the suffering or humiliation of oneself or one's partner[,][or] children or other non-consenting persons . . . [.]" He further related that the term "child[ ]" is defined in the DSM as being a person under the age of thirteen, and that "non-consent" refers to a person who is not agreeable to engage in sexual activity such that it was not intended to include people who are unable to legally consent to sexual activity due to their age, such as in the present matter. Dr. Steffan related he reviewed Bradshaw's records and interviewed him. When asked if he had "an opinion as to whether [Bradshaw] ought to be said to have hebephilia[,]" Dr. Steffan replied it was his opinion "that [Bradshaw] does not have a mental disorder that's commonly

recognized, generally accepted, and can be reliably defined and validly used in the mental health field." He went on to state it was his belief that "hebephilia for [Bradshaw] does not qualify as a mental abnormality." Dr. Steffan related he did not conduct a risk assessment in Bradshaw's case because he "didn't find a mental abnormality."

Following denials of Bradshaw's motions for directed verdict at the close of the State's case and at the close of all the evidence, the jury returned its verdict finding Bradshaw to be an SVP. On July 21, 2011, the trial court entered its "JUDGMENT AND COMMITMENT ORDER" in which it determined Bradshaw was an SVP such that he should be committed to the MDMH "for control, care and treatment until such time as [his] mental abnormality has so changed that he is safe to be at large." This appeal followed.

In his sole point relied on, Bradshaw asserts the trial court erred in overruling his "Motion for Judgment of Acquittal at the Close of All [E]vidence" and in "committing [him] to indefinite secure confinement in the custody of the [MDMH] as [an SVP]...." He maintains there was insufficient evidence presented to clearly and convincingly prove he was an SVP because the State failed to establish he "has a mental abnormality which makes him more likely than not to commit a future act of sexual violence ...." Bradshaw argues this is because "hebephilia is not a diagnosis listed in the [DSM] and cannot be diagnosed under the category of paraphilia, Not Otherwise Specified, which was designed for sexual interests that are deviant but rarely observed and hebephilia is a common sexual interest among adult males."

## Standard of Review

"In reviewing the trial court's denial of [a] motion for a directed verdict, we review to determine if the State made a submissible case." *In re Care and Treatment of Cokes,* 107 S.W.3d 317, 321 (Mo. App. W.D.2003). "In determining whether the State made a submissible case, we are required to view the evidence and all reasonable inferences therefrom in the light most favorable to the State's case and disregard all evidence to the contrary." *Id.* "In doing so, however, we will not 'supply missing evidence or give the State the benefit of unreasonable, speculative, or forced inferences.'" *In re Care and Treatment of Morgan v. State,* 176 S.W.3d 200, 204 (Mo.App. W.D.2005) (quoting *Cokes,* 107 S.W.3d at 321). "To make a submissible case for SVP commitment, the evidence and the reasonable inferences therefrom, viewed in a light most favorable to the State's case, must establish each of the requisite elements of an SVP commitment." *Id.* The elements must be established by substantial evidence, which is "competent evidence from which the trier of fact can reasonably decide the case." *Cokes,* 107 S.W.3d at 323. It was the State's burden to prove by clear and convincing evidence that Bradshaw met the statutory definition of an SVP. *In re A.B.,* 334 S.W.3d at 752.

## Analysis

Bradshaw only disputes the sufficiency of the evidence as it relates to mental abnormality. He does not dispute the evidence regarding any other portion of the statutory definition of an SVP.

"Under [the SVP Act], [an SVP] is defined at section 632.480(5) as 'any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facili-

ty.'" *Bemboom v. State,* 326 S.W.3d 857, 860 (Mo.App. W.D.2010) (quoting § 632.480(5)). "A mental abnormality is defined at section 632.480(2), as 'a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others.'" *Id.* (quoting § 632.480(2)).

By asserting hebephilia is not a mental abnormality that can be used to support an SVP finding, Bradshaw's argument is essentially that Dr. Steffan's testimony should have been found to be more credible than that offered by Dr. Scott and Dr. Weitl. This argument by Bradshaw regarding "the fallacies of [Dr. Scott's and Dr. Weitl's scientific] reasoning [is] nothing more than an attempt to have us reweigh the evidence in his favor. We cannot do so." *Care and Treatment of Barlow v. State,* 250 S.W.3d 725, 734 (Mo. App. W.D.2008).

■■ At the outset, we note that although Bradshaw's counsel argued in moving for a directed verdict that "the State's case is based upon a scientific idea that has not yet proven itself," there was no objection at trial to the testimony of Dr. Scott and Dr. Weitl relating to the scientific theory of hebephilia. As stated in *In the Matter of the Care and Treatment of Muston,* 350 S.W.3d 493, 497–98 (Mo.App. S.D.2011):

> If a question exists as to whether proffered expert testimony is supported by a sufficient factual or scientific foundation, the question is one of *admissibility,* which must be raised by a timely objection or motion to strike. Once an expert opinion has been admitted, as any other evidence, it may be relied upon for purposes of determining the *submissibility* of the case. An appellant

cannot 'back-door' an issue relating to the admissibility of expert testimony under the guise of a sufficiency of the evidence argument.

(Internal citations and quotations omitted) (italics in original).

With that being said, even if we completely disregard the sub-category determination that Bradshaw suffers from hebephilia, there is ample testimony and evidence to support the finding that Bradshaw did, in fact, suffer from a mental abnormality which causes him to "more likely than not ... engage in predatory acts of sexual violence ... [.]" § 632.480(5). Here, Dr. Scott diagnosed Bradshaw with paraphilia, not otherwise specified; antisocial personality disorder; and cannabis abuse. First, paraphilia has been repeatedly found to be a mental abnormality for purposes of the SVP statutes when "'linked to past sexually violent behavior.'" *In re Berg,* 342 S.W.3d 374, 382 (Mo.App. S.D.2011) (quoting *Murrell v. State,* 215 S.W.3d 96, 108 (Mo. banc 2007)). "In Missouri, part of our consideration is whether a relationship exists between a particular disorder and the sexual offenses committed by the alleged [SVP]." *In re Care and Treatment of Burgess,* 147 S.W.3d 822, 831–32 (Mo.App. S.D.2004). Here, Dr. Scott linked Bradshaw's paraphilia with the fact that he had a documented history of repeated violent and other sexual contact with females ages eight to sixteen that included numerous charges and convictions. There was evidence that over a period of less than twenty years, Bradshaw committed at least the following sexual offenses or acts against females under the age of consent: touching the breasts of his ten-year-old niece; endangering the welfare of an underage female with whom he had a sexual relationship by taking her across state lines; fathering a child with a fifteen year old;

raping an eight-year-old relative on two occasions, including one incident with a weapon; raping a teenager he picked up at a club on the hood of his car; and engaging in a sexual relationship with a fourteen-year-old, mentally-challenged girl. Despite his convictions and sentences, Bradshaw continued these sexual actions even after receiving and completing treatment. Dr. Scott concluded that Bradshaw's actions showed a pattern of activity over a long period of time and an inability to control his behavior. Dr. Scott's expert opinion made the necessary connection between the nature of Bradshaw's paraphilia and his propensity to commit sexual assaults.

Second, Dr. Scott also diagnosed Bradshaw with anti-social personality disorder. Anti-social personality disorder "can be a mental abnormality under section 632.480(2) if it is linked with sexually violent behavior." *In re Care and Treatment of Donaldson*, 214 S.W.3d 331, 335 (Mo. banc 2007); *see also In re Shafer*, 171 S.W.3d 768, 771 (Mo.App. S.D.2005). As in *Murrell*, 215 S.W.3d at 108 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 357–358, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)), the link between Bradshaw's anti-social personality disorder and his sexually violent behavior is illustrated by his " 'lack of volitional control, coupled with a prediction of future dangerousness[ ]' " which distinguishes him " 'from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings.' " Bradshaw has committed numerous sex crimes with females under the age of consent; he has done so impulsively as well as with premeditation; and there was no testimony that he exhibited any remorse or regret for his actions. Third, while cannabis abuse alone has not been held to be a mental abnormality, "[s]ubstance abuse has been a noted fac-

tor, however, in several cases." *Burgess*, 147 S.W.3d at 831. "Matters of credibility and weight of testimony are for the factfinder to determine." *Barlow*, 250 S.W.3d at 733 (internal citation omitted). We shall not invade the province of the jury and we defer to its determination that the testimony of Dr. Scott and Dr. Weitl was credible. The State presented substantial evidence from which a reasonable juror could conclude that clear and convincing evidence established Appellant suffered from mental abnormalities which caused him to have serious difficulty controlling his behavior and that Appellant was an SVP. *See Cokes*, 107 S.W.3d at 323. Point denied.

The judgment of the trial court is affirmed.

GARY W. LYNCH, P.J., and NANCY STEFFEN RAHMEYER, J., Concur.