**In the Matter of the CARE AND TREATMENT OF James Alvin FRANCIS, Respondent–Appellant.**

**No. 26162.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 18, 2005.

Emmett D. Queener, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Alana M. Barragan–Scott, Deputy Solicitor, Jefferson City, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

After a bench trial, James Francis ("Francis") was found to be a sexually violent predator ("SVP") pursuant to the Sexually Violent Predators Civil Commitment Act ("SVPCCA"), §§ 632.480–.513.[1] Francis appeals from the judgment ordering him committed to the custody of the Department of Mental Health for control, care and treatment until such time as his

---

1. All references to statutes are to RSMo (2000), unless otherwise specified.

mental abnormality has so changed that he is safe to be at large.[2] In Francis' sole point relied on, he challenges a single factual finding made by the trial court: "That [Francis'] mental abnormality makes him more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility." Francis claims there is insufficient evidence to prove this fact beyond a reasonable doubt because: (1) destructive contradictions within the testimony of Dr. Lucinda Baker, the State's expert, deprived her testimony of probative value; and (2) the court's judgment rests on mere speculation as to Francis' future behavior. Finding these arguments to be without merit, we affirm.

## I. Standard of Review

In order to have Francis committed to the custody of the Department of Mental Health for treatment, the State had to prove beyond a reasonable doubt that: (1) Francis has a congenital or acquired condition affecting his emotional or volitional capacity that predisposes him to commit sexually violent offenses to a degree that causes him serious difficulty in controlling his behavior; and (2) he is more likely than not to engage in predatory acts of sexual violence if not confined. § 632.480(2); § 632.480(5); § 632.495; *Thomas v. State*, 74 S.W.3d 789, 791–92 (Mo. banc 2002); *In re Coffel*, 117 S.W.3d 116, 121 (Mo.App.2003). Francis only challenges the sufficiency of the evidence to establish the second element.

▉▉▉ We assess the sufficiency of the evidence to support a judgment of commitment in a SVPCCA case by the same standard used in criminal cases. *See Smith v. State*, 148 S.W.3d 330, 335 (Mo.

App.2004); *In re Care and Treatment of Collins*, 140 S.W.3d 121, 125–26 (Mo.App. 2004); *In re Care and Treatment of Pate*, 137 S.W.3d 492, 496 (Mo.App.2004). Review of a bench-tried criminal case is the same as for a jury-tried case. *State v. Garriott*, 151 S.W.3d 403, 410 (Mo.App. 2004); *State v. Daniels*, 18 S.W.3d 66, 67–68 (Mo.App.2000). Appellate review is limited to determining whether sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense was established beyond a reasonable doubt. *State v. Mann*, 129 S.W.3d 462, 465 (Mo.App.2004); *State v. Thompson*, 112 S.W.3d 57, 62 (Mo. App.2003); *Daniels*, 18 S.W.3d at 68. It is not our function to reweigh the evidence. *State v. Winsor*, 110 S.W.3d 882, 885 (Mo. App.2003). Instead, we only determine whether the judgment is supported by sufficient evidence. *Id.* "The credibility and weight of testimony are for the fact-finder to determine. The fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002) (citation omitted).

▉▉▉ When the sufficiency of the evidence is challenged, we view the evidence in the light most favorable to the trial court's judgment, "accepting as true all evidence favorable to the state, including all favorable inferences drawn from the evidence and disregarding all contrary evidence and inferences." *Whitnell v. State*, 129 S.W.3d 409, 415 (Mo.App.2004). In reviewing the evidence, however, "this Court will not give the State the benefit on any unreasonable, speculative, or forced inferences; nor will we supply any missing

---

**2.** This is the second appeal in this case. Francis was originally found to be a SVP by a unanimous jury verdict at his first trial. That judgment was reversed because of an error in the jury instructions. *See Care and Treatment of Francis v. State*, 100 S.W.3d 807, 808 (Mo. banc 2003). On remand, Francis waived his right to a jury trial.

evidence." *In re Care and Treatment of Burgess*, 147 S.W.3d 822, 830 (Mo.App. 2004). We will not reverse a trial court's decision based on insufficiency of the evidence unless there is a complete absence of probative facts supporting the judge's conclusion. *See Smith*, 148 S.W.3d at 335. The following summary of the evidence has been prepared in accordance with these principles.

## II. Statement of Facts

Francis had a long pattern of repeated sexual offenses against children. In 1969, he married E.M. She already had a number of children from a prior relationship. These children included four young daughters: A.L.M., age 6; R.M., age 4; A.M.M., age 3; and S.M., age 2. From 1969 through 1972, Francis repeatedly molested *all four of these young girls.* On multiple occasions, he simulated sexual intercourse with them by placing his penis between their legs and masturbating to ejaculation. He frequently forced them to endure digital penetration of their vaginas with his fingers. On one occasion, he forced R.M. to have either vaginal or anal intercourse with him. Francis used fear, force and threats of violence to accomplish his sexual abuse of these children. During one incident involving A.L.M., for example, Francis placed a knife to her throat and threatened to kill her if she did not allow him to abuse her.

In 1972, a complaint was made against Francis accusing him of molesting a 7-year-old girl. When that information was relayed to the prosecutor, he reported that Francis was "known for that sort of thing, he had molested children previously." In lieu of charges being filed, Francis was treated for a month at the Farmington State Hospital.[3]

After Francis was released, he returned to live with E.M. and renewed his abuse of her four daughters. In 1974, Francis was sent to Farmington again for three days of treatment after he was reported to have been exposing himself to E.M.'s children and threatening to molest them. In 1975, he was arrested and charged with molesting A.M.M. Afterwards, Francis threatened to kill A.M.M. if she testified against him. Francis eventually pled guilty to this offense and was found to be a criminal sexual psychopath pursuant to §§ 202.700–.770 RSMo (1969). He was committed to Farmington for treatment for five years.

Francis was conditionally released from Farmington in 1980. In August 1980, Francis had anal intercourse with W.L., a 12-year-old boy. Francis also sexually assaulted J.L. who was W.L.'s 11-year-old sister, by placing his penis between her legs and masturbating until he ejaculated. In 1981, Francis pled guilty to the class B felony of sodomy for assaulting W.L. and to the class D felony of sexual abuse in the first degree for assaulting J.L. Francis was sentenced to five-years imprisonment on the sodomy conviction and two-years imprisonment on the first degree sexual abuse offense. The sentences were ordered to run consecutively.

Francis was released from prison in January 1988. He was rearrested in June 1989 and charged with the class B felony of sodomy for forcing C.S., a 5-year-old boy, to perform oral sex on Francis and for forcing C.S. to engage in anal intercourse with Francis. Francis pled guilty to this charge and was sentenced to serve ten years in prison.

In May 1999, the State filed a petition in the probate division of the Circuit Court of Butler County, Missouri. The petition alleged Francis was a SVP and should not

---

3. This institution is now known as the Southeast Missouri Mental Health Center.

be released from prison at the expiration of his sentence. After conducting a hearing, the trial court concluded there was probable cause to believe Francis was a SVP and should be detained for evaluation. At the State's request, Francis was evaluated by Dr. Lucinda Baker ("Dr. Baker"), a psychologist employed by the Mid–Missouri Mental Health Center in Columbia, Missouri.

After remand (*see* note 2), this case was tried to the court. At the State's request, the trial judge admitted in evidence the following documentary evidence: (1) a certified copy of Francis' 1981 conviction for sodomizing W.L.; (2) a certified copy of Francis' 1981 conviction for sexually abusing J.L.; (3) a certified copy of Francis' 1989 conviction for sodomizing C.S.; and (4) transcripts of the testimony given at the first trial by A.L.M., R.M., A.M.M., and S.M. in which they described in detail how they were sexually abused by Francis over a period of six years. The State's only live witness was Dr. Baker.

After interviewing Francis and examining "hundreds of pages" of records concerning him, Dr. Baker testified Francis suffers from the mental abnormality of pedophilia.[4] This condition consists of recurrent and intense fantasies, impulses or behaviors directed toward prepubescent children and children who are below the age of consent. Based on Francis' pattern of offenses, he is attracted to both boy and girl children. This mental abnormality of pedophilia predisposes Francis to commit sexually violent crimes. Pedophiles cannot be cured; the best that can be achieved is that they learn to control their pedophilia through treatment or other methods. As Dr. Baker explained, however, Francis has not accepted, or not responded to, treatment while committed or incarcerated. Francis showed little response to treatment he received at Farmington while committed from 1975–80 and while detained since 1999. He was quite resistant to treatment and had not received any treatment "that would modify in any way his sexual preferences." While Francis was incarcerated, he started the first phase of the Missouri Sex Offenders Program ("MOSOP"), but he never completed the second treatment phase. He was offered the opportunity to do so twice, but he refused.

The mental abnormality of pedophilia causes Francis serious difficulty in controlling his behavior. Despite having served lengthy prison sentences, something is compelling him to reoffend regardless of the consequences. He is not deterred by incarceration. Francis also has very minimal insight into why he molests children. He attributes his behavior to anger, nervousness and/or the inability to control himself.

Dr. Baker opined that Francis' mental abnormality of pedophilia makes him more likely than not to engage in predatory acts of sexual violence if not confined to a secure facility. She identified the following characteristics, all drawn from the relevant professional literature on the subject, which identify Francis as a recidivist sex offender: (1) the continuous and frequent pattern of sexual offenses since 1969; (2) poor social competence; (3) uncompleted sex offender treatment; (4) strong preoccupation with having sex with children; (5) his child victims include persons outside his family; and (6) his victims include children of both sexes. These factors all in-

---

4. These records included documents concerning Francis from the Missouri Department of Corrections, medical records from his confinement at Farmington, interview notes, police reports, offense reports, victim statements, FBI identification records and the order of commitment declaring him to be a criminal sexual psychopath.

crease the risk of recidivism. In particular, men who molest children and men who have male victims tend to be more hard-core recidivists.

Dr. Baker also examined some moderating factors that reduce this risk, but she did not find them to be significant. For example, Francis' only plan to avoid relapse was to "avoid children. It seemed rather unrealistic." Likewise, Francis' age at the time of the second trial (62 or 63) was only a slight moderating factor because, unlike rapists, the curve by which a pedophile's offending behavior decreases is slow and gradual. At the conclusion of Dr. Baker's direct examination, she testified to a reasonable degree of psychological certainty that, as a result of Francis' mental abnormality of pedophilia, he is more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility.

The trial court was persuaded by the evidence presented and made a specific factual finding that "[Francis'] mental abnormality makes him more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility." This appeal followed.

### III. Discussion and Decision

■ The only issue presented by Francis' appeal is whether the above factual finding is supported by the evidence and the reasonable inferences derived therefrom, viewed in a light most favorable to the judgment. Francis argues the evidence is insufficient to prove this fact beyond a reasonable doubt because: (1) destructive contradictions within the testimony of Dr. Baker, the State's expert, deprived her testimony of probative value; and (2) the court's judgment rests on mere speculation as to Francis' future behavior.

Francis first argues Dr. Baker's opinion concerning the likelihood that Francis would reoffend rests on speculation. Francis begins his argument by noting that Dr. Baker relied on a published study by Dr. Hansen and Dr. Bussiere ("the H & B study") to identify risk factors relating to recidivism.[5] Francis bases his argument on the fact that the H & B study derived a general recidivism rate for all sex offenders as a group at only 13%. Francis claims Dr. Baker's testimony that Francis is more likely than not to reoffend is destructively inconsistent with this statistical recidivism rate.[6] We disagree.

Dr. Baker explained the H & B study is a meta-analysis, which is performed by combining the results of many different studies in an attempt to give the meta-analysis greater statistical significance. When Dr. Baker formulated her opinions and conclusions about risk factors, she used this H & B meta-analysis study *in addition to* the other clinical literature on the subject because the H & B study combined "all manner of sex offenses" in

---

**5.** Francis also refers in his argument to a Department of Corrections study containing some statistical information comparing reoffense rates for inmates who did or did not complete MOSOP. While Dr. Baker was asked about this study on cross-examination, she had not reviewed it, and she described it as an unpublished in-house study that was not subjected to peer review. She did not authenticate this study as the type of information reasonably relied upon by experts in her field in forming opinions on the subject. *See*

§ 490.065.3. Therefore, we will not address Francis' arguments insofar as they are based on the results of this unauthenticated study.

**6.** As relevant here, the doctrine of "destructive contradictions" is only properly invoked if Dr. Baker's testimony is so inherently inconsistent or self-destructive on a vital point or element that reliance on her testimony is necessarily precluded. *See State v. Cole,* 148 S.W.3d 896, 902 (Mo.App.2004).

its analysis. It was not specific to child molesters. In particular, Dr. Baker did not believe the general 13% reoffense rate derived from the meta-analysis methodology accurately reflected the recidivism rate for child molesters because some types of offenders have a higher reoffense rate than others. Studies looking specifically at recidivism rates for child molesters gave a truer reoffense rate. Therefore, Dr. Baker's testimony that Francis was more likely than not to reoffend is not speculative because she adequately explained why the H & B study's 13% statistical recidivism rate for all sex offenders did not apply to Francis.

In Dr. Baker's opinion, the most important factor relating to the risk of recidivism is "patterns of offending, and past behavior is the best predictor of future behavior. So if you have one offense, it doesn't carry as much weight as if you have three or four, plus three or four accusations that weren't adjudicated. And that sort of number has an impact." In considering the weight to give Dr. Baker's opinion, the trial judge had a right to consider the facts concerning Francis' history of offenses against children. Francis engaged in frequent molestation of A.M.M., R.M., A.L.M., and S.M. from 1969–72. After receiving one month of treatment, Francis immediately returned to his pattern of molesting these same girls. An additional three days of treatment in 1974 had no effect in curbing his pedophilic tendencies. He persisted in molesting these four children until he was sent to Farmington in 1975. Five years of treatment had no effect in curbing his pedophilic tendencies. He was released from Farmington in 1980 and molested two new victims within a few months of being released. After an additional 7 years of incarceration, he molested C.S., a 5–year–old boy, within 18 months of being released from prison.

Given this persistent pattern of pedophilia, the trial judge had every right to believe that the H & B study's 13% statistical recidivism rate for all sex offenders did not apply to Francis and to conclude that he was more likely than not to reoffend if not confined to a secure facility. The judge's decision concerning Francis' future behavior was not based on speculation, but on a solid evidentiary foundation.

Francis next argues that Dr. Baker's testimony about Francis' recidivism risk is speculative because failure to complete treatment is only a moderate recidivism risk factor. This argument ignores Dr. Baker's testimony that pedophiles cannot be cured and only learn to control their behavior through treatment or some other means. In the case at bar, attempts had been made to curb Francis' pedophilia through treatment and incarceration. Neither worked. Francis' recurring pattern of sexually abusing children provided ample factual corroboration for Dr. Baker's testimony. Furthermore, Dr. Baker identified a number of other risk factors, in addition to failure to complete treatment, which supported her conclusion about Francis' individualized recidivism risk. Once again, the trial court had a right to consider Dr. Baker's testimony as a whole, in conjunction with Francis' offense history, in order to reach a conclusion concerning Francis' risk of recidivism. The judge's determination that Francis' mental abnormality of pedophilia makes him more likely than not to engage in predatory acts of sexual violence if not confined to a secure facility is not speculative and is supported by the evidence.

Having considered the various challenges made by Francis to Dr. Baker's testimony, we hold that all of these matters go only to the weight to be given to her opinions and conclusions. None con-

stitute "destructive contradictions" that deprive her testimony of probative value, as Francis suggests. It was the trial court's responsibility to weigh the facts and reach a conclusion about the likelihood that Francis will continue to engage in predatory acts of sexual violence because of his pedophilia. The judge's conclusion concerning Francis' future behavior is supported by substantial evidence. Therefore, the judgment is affirmed.

PARRISH, P.J., and SHRUM, J., concur.