In the Matter of the Care and Treatment of Larry BEMBOOM, a/k/a Larry J. Bemboom, Jr., a/k/a Larry Joseph Bemboom, a/k/a Larry J. Bemboon, a/k/a Larry J. Bemboom, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 71619.

Missouri Court of Appeals, Western District.

Dec. 14, 2010.

Emmett D. Queener, Columbia, MO, for appellant.

Jayne T. Woods and James S. Atkins, Jefferson City, MO, for respondent.

Before Division Three: ALOK AHUJA, Presiding Judge, VICTOR C. HOWARD, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Larry Bemboom ("Bemboom") appeals from a judgment entered by the Boone County probate court committing Bemboom to the custody of the Director of the Department of Mental Health as a sexually violent predator following a jury trial. In his sole point on appeal, Bemboom argues that the probate court erred because Dr. Kent Franks's ("Dr. Franks") testimony

failed to clearly and convincingly establish the presence of a mental abnormality causing Bemboom serious difficulty controlling his behavior. We affirm.

## Facts and Procedural History

Bemboom pleaded guilty to first degree sexual assault and deviate sexual assault in 2003. He was sentenced to five years in prison. Prior to his release from incarceration, Dr. Kimberly Weitl filed an end-of-confinement report wherein she opined that Bemboom appeared to meet the statutory definition of a sexually violent predator. Dr. Weitl diagnosed Bemboom with paraphilia, sexually attracted to non-consenting females, nonexclusive type, and antisocial personality disorder. Dr. Weitl also opined that Bemboom posed a high risk to re-offend. On August 22, 2008, the State filed a petition to civilly commit Bemboom as a sexually violent predator under section 632.486.[1] Following the probate court's determination of probable cause to proceed, the Department of Mental Health was ordered to conduct an evaluation of Bemboom.

Dr. Franks conducted the evaluation. He reviewed a number of Bemboom's records, including: Department of Corrections' records, Probation and Parole records, medical records, psychological records, treatment records, education records, police and sheriff department records from a number of jurisdictions, and court records from a number of jurisdictions. Dr. Franks opined that Bemboom suffered from two abnormalities: paraphilia not otherwise specified and antisocial personality disorder. Dr. Franks further opined that these mental abnormalities caused Bemboom serious difficulty controlling his behavior. Dr. Franks based this opinion in part on Bemboom's frequent contacts with law enforcement and on his repeated engagement in criminal behavior despite detection, supervision, treatment, and incarceration.[2] Dr. Franks opined that Bemboom was at a very high risk to reoffend based on actuarial measures and dynamic risk factors.

Following a three day jury trial where Dr. Franks testified as the State's expert witness, Bemboom was found to be a sexually violent predator and was committed to the custody of the Director of the Department of Mental Health. Bemboom appealed.

## Standard of Review

Our review in a sexually violent predator case is limited to determining whether there was sufficient evidence admitted from which a reasonable fact finder could find each necessary element under section 632.486. *In re Care & Treatment of Barlow v. State*, 250 S.W.3d 725, 733 (Mo.App. W.D.2008). Section 632.495.1 requires that each element necessary to establish that one is a sexually violent predator must be proven by clear and convincing evidence. "Matters of credibility and weight of testimony are for the fact finder to determine." *Barlow*, 250 S.W.3d at 733. For that reason, the evidence is viewed "in the light most favorable to the judgment, accepting as true all evidence and reasonable inferences favorable to the judgment and disregarding all contrary evidence and inferences." *Id.*

## Analysis

In his sole point on appeal, Bemboom claims that the probate court erred in having him involuntarily committed as a

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

2. The particulars of Dr. Franks's testimony and of the testimony of other witnesses will be addressed in our discussion.

sexually violent predator because the testimony of Dr. Franks did not clearly and convincingly establish that his mental abnormalities caused him to have serious difficulty controlling his behavior. Bemboom maintains that Dr. Franks's testimony at best established that he is a typical recidivist who is not subject to civil commitment. We disagree.

Under Missouri's Sexually Violent Predators Civil Commitment Act, a sexually violent predator is defined at section 632.480(5) as "any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility." A mental abnormality is defined at section 632.480(2) as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others."

■ The Missouri Supreme Court has determined that in instructing a jury, mental abnormality must be defined as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to commit sexually violent offenses in a degree *that causes the individual serious difficulty in controlling his behavior.*" *In re Care & Treatment of Thomas v. State,* 74 S.W.3d 789, 792 (Mo. banc 2002). The requirement that mental abnormalities cause an offender serious difficulty controlling his behavior was engrafted into the definition of mental abnormality in response to the United States Supreme Court's decisions in *Kansas v. Crane,* 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), and *Kansas v. Hendricks,* 521 U.S. 346, 358, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), which combine to hold that sexually violent predator statutes are constitutional so long

as the definition of mental abnormality distinguishes sexually violent predators from other dangerous persons more properly dealt with via traditional criminal proceedings. As noted in *In re Care & Treatment of Murrell v. State,* 215 S.W.3d 96, 104 (Mo. banc 2007), "to pass constitutional muster the statute must require a finding of future dangerousness and then link that finding to the existence of a 'mental abnormality' or 'personality disorder' that causes the individual serious difficulty controlling his behavior." This standard is necessary to "distinguish the dangerous sexual offender whose mental illness, abnormality or disorder subjects him to civil commitment from the dangerous but typical recidivist." *Thomas,* 74 S.W.3d at 791–92.

■ Though the State must demonstrate by clear and convincing evidence that an offender has a mental abnormality causing the offender serious difficulty controlling his behavior, the State is not required to prove that the offender has an absolute inability to control his behavior. *Crane,* 534 U.S. at 411, 122 S.Ct. 867. "*Hendricks* set forth no requirement of *total* or *complete* lack of control." *Id.* "The word 'difficult' indicates that the lack of control to which this Court referred [in *Hendricks* ] was not absolute." *Id.* "Insistence upon absolute lack of control would risk barring the civil commitment of highly dangerous persons suffering severe mental abnormalities." *Id.* at 412, 122 S.Ct. 867.

The requirement that a mental abnormality causes an offender serious difficulty controlling his behavior has created a fertile ground for appellate review. Frequently, there is evidence of a pattern of behavior in the face of social and criminal consequences which forms the basis, at least in part, for an expert's opinion that an offender's mental abnormality causes the offender serious difficulty controlling his behavior. Equally frequently, offend-

ers will claim that such evidence establishes no more than a pattern of recidivism, insufficient to establish by clear and convincing evidence a causal relationship between a diagnosed mental abnormality and serious difficulty controlling behavior. That is the precise tension presented by the single issue raised by Bemboom in this appeal.

However, several reported decisions out of our Eastern and Southern Districts have addressed this issue and have concluded that evidence of a pattern of sexually deviant behavior permits a reasonable inference that a mental abnormality has caused, and can be expected to cause, an offender serious difficulty controlling his behavior. *See, e.g., In re Care & Treatment of Elliott v. State*, 215 S.W.3d 88, 94 (Mo. banc 2007) (expert testified that defendant's reoffending when released from jail and while on probation indicated that he could not control his behavior); *In re Care & Treatment of Francis*, 159 S.W.3d 873, 877 (Mo.App. S.D.2005) ("The mental abnormality of pedophilia causes Francis serious difficulty in controlling his behavior. Despite having served lengthy prison sentences, something is compelling him to reoffend regardless of the consequences."); *In re Care & Treatment of Collins*, 140 S.W.3d 121, 125–26 (Mo.App. E.D.2004) (repeated failure in treatment programs and trouble with supervision while on probation sufficient evidence to establish serious difficulty controlling behavior); *In re Care & Treatment of Pate*, 137 S.W.3d 492, 498 (Mo.App. E.D.2004) (frequent arrests for both sexual and nonsexual offenses along with ongoing substance abuse problems sufficient evidence of serious difficulty controlling behavior).

Bemboom does not contest Dr. Franks's medical opinion that he suffers from two mental abnormalities: paraphilia not otherwise specified and antisocial personality disorder. Bemboom also does not contest Dr. Franks's opinion that Bemboom is at high risk to reoffend. Bemboom only argues that Dr. Franks's testimony about Bemboom's past pattern of deviant behavior and his high risk to reoffend prove merely that Bemboom may be a recidivist and do not establish by clear and convincing evidence that Bemboom's mental abnormalities cause him to have serious difficulty controlling his behavior. Bemboom's argument presupposes that evidence of a risk of reoffending and of a pattern of past offenses is not relevant to establish whether an offender has serious difficulty controlling his behavior. Unfortunately for Bemboom, *Elliott, Francis, Collins*, and *Pate* disagree.

At trial, Dr. Franks testified that, in his opinion, Bemboom suffers from mental abnormalities which make him more likely than not to engage in sexually predatory acts in the future if not confined in a secure facility. Dr. Franks testified that Bemboom's mental abnormalities cause him to have serious difficulty in controlling his behavior. Dr. Franks opined that Bemboom is a sexually violent predator.

Dr. Franks's opinions followed his examination of numerous records which revealed the following:

- In approximately 1983, when Bemboom was thirteen years old, he fondled the breasts and vagina of an eight year old girl and forced her to perform oral sex on him.

- In approximately 1983, Bemboom fondled and orally copulated a twelve year old boy while another person photographed the incident.

- In approximately 1984, while in the seventh grade, Bemboom went to counseling after he was discovered soliciting boys to perform oral sex for him in the bathroom.

- In approximately 1985, Bemboom exposed his penis to a thirteen year old girl, and on approximately five occasions, to girls from his church. In or around the same time, Bemboom exposed himself to a younger female relative. In response, his mother placed him in the Burrell Behavioral Health Center in Springfield, Missouri, for psychological treatment.
- While at Burrell Behavioral Health Center for treatment, Bemboom fondled the buttocks of a fourteen year old girl.
- By approximately 1988, Bemboom was exposing himself to strangers frequently and was engaging in oral sex with numerous, random partners. He was suspended from high school following an incident in which he exposed himself to another student. Bemboom blamed his behavior on his teachers.
- In approximately October 1989, Bemboom was arrested in Nixa, Missouri, for exposing himself to three young girls at a bus stop. Bemboom was found guilty of three counts of indecent exposure and placed on probation.
- In approximately December 1989, Bemboom exposed his genitalia to a group of junior high girls in Springfield, Missouri. Bemboom was again found guilty of three counts of indecent exposure and placed on probation. His probation was revoked in December 1990.
- In approximately 1990, Bemboom again underwent sex offender treatment of Burrell Behavioral Mental Health in Springfield, Missouri. He admitted to exposing himself and to molesting a younger female relative.
- In approximately 1993, the police were called when two women caught Bemboom looking into the window of their trailer.
- In approximately 1995, Bemboom moved in with a sixteen year old girl whom he repeatedly raped. Bemboom also engaged in oral sex with her eleven year old brother on more than one occasion.
- In approximately 1996, Bemboom reported that he forced a nineteen year old girl to have sex with him for drugs.
- In approximately 1997, Bemboom developed an addiction to drugs. He sought inpatient treatment at the Salem Treatment Center. While at the Center, Bemboom was sleeping with, and performing oral sex on, other male patients.
- In approximately 1998, Bemboom reported having oral sex with a fourteen year old girl. Bemboom said that he moved in with two girls, fourteen and sixteen years old, and slept in the same bed with them and a young boy. He also reported that he raped a fifteen year old girl and fondled a fourteen year old girl.
- In approximately June 2000, Bemboom was arrested in Greene County, Missouri, and charged with forcible sodomy of a twelve year old girl. He was convicted of endangering the welfare of a child. Bemboom gave the child marijuana to smoke, then fondled her and inserted his penis into her anus. Bemboom was sentenced to five years, with the imposition of sentence suspended, and three years probation.
- In approximately 2001 and 2002, and while on probation, Bemboom stated that he sexually assaulted a number of victims for which he was never detected. Bemboom reported that he molested boys and girls, ages eight to seventeen, at the Salvation Army. Bemboom specifically reported multiple rapes of an identified girl and an identified boy.
- In approximately 2003, Bemboom reported that he held a nineteen year old girl and an eighteen year old girl captive, abusing both sexually. Over the

time Bemboom held the girls in captivity, he physically assaulted them daily and forced them to perform oral sex on him. The girls were restrained in order to prevent them from leaving his residence.

• In the same time frame, Bemboom reported that he frequented adult theaters where he performed oral sex on men.

• In 2003, Bemboom pleaded guilty to the charges which resulted in the incarceration immediately preceding the State's effort to secure his civil commitment as a sexually violent predator. These charges stemmed from Bemboom picking up a thirty-nine year old woman for the purported purpose of giving her a ride home. Instead, Bemboom took the woman to his house where he forced her to perform oral sex on him and vaginally raped her. During the assault, Bemboom insisted that the victim call him "master," made racially denigrating comments to the victim, and informed the victim that his grandparents once owned slaves. The victim escaped and fled nude from Bemboom's residence.

• Over much of the aforesaid time frame, Bemboom was continually molesting a younger female relative. Bemboom would sneak into her room during the night, cover her mouth, and have sex with her. He would take her into the family shed, remove her clothes, spread her legs, and penetrate her vaginally with a variety of foreign objects. To insure her silence, Bemboom threatened to kill her if she reported him. The younger female relative did not report Bemboom until many years later, approximately five or six years before Bemboom's commitment trial.

• While incarcerated for the 2003 convictions, Bemboom was offered the chance to participate in the Missouri Sexual Offenders Program (MOSOP), a prison-based sex offender treatment program.

Bemboom failed MOSOP after just three months.

Relying on the above information and other information obtained from the records he reviewed, Dr. Franks discussed his diagnosis of paraphilia and antisocial personality disorder, illustrating the events from Bemboom's history which fulfilled the required criteria necessary for each diagnosis. Dr. Franks testified that the facts on which he relied to reach his diagnosis were consistent with those used by, and reasonably relied on by, experts in his field.

Dr. Franks testified that Bemboom had a mental abnormality that caused him to have serious difficulty controlling his behavior such that, if not confined, Bemboom would be more likely than not to engage in future acts of predatory sexual violence. Specifically, Dr. Franks testified that:

after detection, supervision, treatment, the individual who continues to engage in the same behavior after its clearly been shown to them they're going to get into a lot of trouble for that and lose their liberty as a result of that, and they still continue to engage in the same behavior, in my opinion that suggests an inability to control that behavior in question.

Dr. Franks also testified that Bemboom had never successfully completed a sex offender's treatment program, despite three attempts, and that this indicated that he posed a "high risk of reoffending."

■ Dr. Franks did testify that based on the use of actuarial instruments and other tests reasonably relied on by experts in his field, he believed that Bemboom is "going to be much more likely to reoffend either violently or sexually" and that offenders like Bemboom "don't respond to any conventional or known form of psychological treatment." Bemboom claims this testimony merely established the likelihood that Bemboom would be a recidivist. Bemboom also claims that Dr. Franks's

testimony simply demonstrated that Bemboom has chosen not to control his behavior and not that Bemboom cannot control his behavior. Bemboom's arguments ignore, as discussed above, that evidence of a pattern of deviant behavior is relevant to establish that an offender has had, and will have, serious difficulty controlling his behavior. Bemboom's arguments also ignore *Crane,* which held that an offender's absolute inability to control his behavior is not the standard required to establish that an offender is a sexually violent predator. 534 U.S. at 411, 122 S.Ct. 867. Here, in addition to hearing about the long pattern of deviant sexual behavior engaged in by Bemboom, the jury also heard Dr. Franks testify "that because of the paraphilia and the anti-social personality disorder, [Bemboom] does experience serious difficulty controlling his behavior." In fact, Dr. Franks testified that an attribute of anti-social personality disorder is a lack of impulse control. Expert witness testimony is admissible on the issue of whether an offender has "serious difficulty controlling his behavior." *Elliott,* 215 S.W.3d at 94. The jury was free to believe Dr. Franks's expert testimony. *Id.; Barlow,* 250 S.W.3d at 733.

We find that the State presented sufficient evidence from which a reasonable jury could conclude that clear and convincing evidence established that Bemboom suffers from mental abnormalities which cause him to have serious difficulty controlling his behavior and that Bemboom is a sexually violent predator.

### Conclusion

The judgment of the probate court is affirmed.

All concur.