

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| IN THE MATTER OF THE CARE AND TREATMENT OF MICHAEL SOHN, | ) ) ) | No. ED102172 |
| Appellant. | ) ) | Appeal from the Circuit Court of Jefferson County |
| | ) ) | Hon. Mark T. Stoll |
| | ) ) | FILED: October 27, 2015 |

## Introduction

Appellant Michael Sohn ("Sohn") appeals from the judgment of the probate court, following a jury trial, committing Sohn to the Missouri Department of Mental Health as a sexually violent predator ("SVP"). Sohn, who is deaf, unsuccessfully sought to exclude from evidence at trial expert witness testimony from Dr. Griffith about her interview with Sohn and Sohn's Missouri Sex Offender Program ("MOSOP") records. On appeal, Sohn challenges the probate court's rulings on the grounds that the statements at issue in the interview and the MOSOP records were not sufficiently reliable to allow Dr. Griffith to offer expert opinion testimony as to whether Sohn was an SVP. Dr. Griffith's testimony at trial sufficiently established that her interview with Sohn and Sohn's MOSOP records represent the type of evidence reasonably relied on by experts in Dr. Griffith's field and are "otherwise reasonably

reliable." Accordingly, the probate court did not abuse its discretion in denying Sohn's motions to exclude such evidence. We affirm the judgment of the probate court.

## Factual and Procedural History

In July 2013, the State filed a petition seeking Sohn's commitment to the Department of Mental Health as an SVP. The State alleged Sohn suffered from a mental abnormality making him more likely than not to engage in predatory acts of sexual violence if released from confinement. Sohn was previously convicted of forcible sodomy and child molestation in the first degree in a case involving an eight-year-old boy. Both of those crimes are sexually violent offenses. Sohn did not successfully complete MOSOP treatment. Sohn was medically discharged from MOSOP, in part because he had difficulty comprehending sexual offender treatment.

Dr. Griffith, a licensed psychologist, evaluated Sohn to determine whether he was an SVP. Dr. Griffith based her evaluation of Sohn on her review of Sohn's MOSOP file, her interview of Sohn (in which Dr. Griffith was aided by two interpreters), an actuarial assessment, and consideration of any other risk factors related to Sohn's likelihood of re-offending.

Sohn filed several motions in limine to exclude evidence with the probate court. Two of these motions are the focus of this appeal. In his third motion in limine, Sohn sought to exclude Dr. Griffith from testifying at trial and further sought to exclude Dr. Griffith's report and its contents from being used at trial. In support of his motion, Sohn argued that Dr. Griffith's evaluation of him was not conducted in a reasonably reliable manner as required by Section 490.065.3.[1] Specifically, Sohn maintained that the interpreters assisting in the interview had difficulty communicating with Sohn, rendering the interview unreliable. In his sixth motion in limine, Sohn sought to exclude his MOSOP records from evidence because the MOSOP records

---

[1] All statutory references are to RSMo. 2000.

2

at issue were not reasonably reliable as required by Section 490.065 and therefore could not be relied upon by expert witnesses. Specifically, Sohn stated that he had substantial communication and comprehension problems while participating in MOSOP, rendering the MOSOP records unreliable. The probate court denied both motions in limine.

A jury trial was held in which Dr. Griffith testified as an expert witness as to her findings.[2] Dr. Griffith testified that she had performed between 400 and 500 SVP evaluations, and that she had received approximately 40 hours of intensive training in working with the deaf. Dr. Griffith stated that in conducting her evaluation and rendering her expert opinion, she relied upon her interview with Sohn and her review of Sohn's records, including notes and information from Sohn's participation in MOSOP.

Dr. Griffith interviewed Sohn for approximately four hours. Two American Sign Language interpreters were present during the interview. Dr. Griffith testified that, in order to make sure that Sohn understood the purpose of the interview and SVP evaluation, she and the interpreters spent approximately one hour explaining the process to Sohn. Both sign language interpreters were familiar with Sohn and had assisted him during his treatment. Dr. Griffith noted that Sohn tended to mix his pronouns, which sometimes made it difficult for the interpreters to convey his statements. Additionally, there were a few times when the interpreters disagreed about the meaning of Sohn's signs, and Sohn at one point provided a "confusing" narrative about one of his offenses. Dr. Griffith testified that the interpretation issues usually were related to a specific word and that Sohn's responses to her questions were relevant and corroborated the victims' accounts of the offenses. Dr. Griffith further testified that her communication with Sohn was adequate and that all of his responses were clarified.

---

[2] Three other expert witnesses also testified regarding their evaluations of Sohn.

3

Dr. Griffith also testified that she relied on notes and information from Sohn's participation in MOSOP in performing her evaluation and rendering an expert opinion. These notes included written statements made by Sohn and his victim disclosure form. Dr. Griffith noted that although the victim disclosure form was apparently written by Sohn, she was uncertain if Sohn wrote the statements with the assistance of an interpreter. Dr. Griffith testified that the information contained in the documents she reviewed and the contents of the interview were the types of evidence reasonably relied upon by experts in her field of expertise.

Dr. Griffith diagnosed Sohn with a mental abnormality, concluding that Sohn had pedophilia and was sexually attracted to both males and females, "nonexclusive" type. Dr. Griffith noted that Sohn had sexual fantasies about children, admitted to seeking out children in public restrooms in an attempt to see "beautiful boy penis," and admitted to "peeping" into the windows of a neighbor's home to watch children. Dr. Griffith testified that Sohn's pedophilia predisposed him to committing sexually violent offenses. Dr. Griffith stated that Sohn had serious difficulty controlling his behavior and was unable to prevent himself from acting out in a sexually violent manner, noting additionally that Sohn reported driving around looking for victims.

Dr. Griffith also assigned Sohn scores based on two actuarial assessments, the Static-99R, which considers historic risk factors, and the Stable-2007, which measures dynamic risk factors. Dr. Griffith testified that Sohn's composite score on the two assessments indicated that he had a moderate-high risk level to re-offend. Dr. Griffith noted that her assessment was also based on a consideration of additional risk factors, including Sohn's deviant sexual interest, offense supportive attitude, emotional congruence with children, poor problem solving, and lack of emotionally intimate relationships with adults. Ultimately, Dr. Griffith found that Sohn was

4

more likely than not to re-offend if not confined to a secure facility, and concluded that he was an SVP.

The jury found Sohn to be an SVP and the probate court then issued its Judgment and Commitment Order finding Sohn to be an SVP and committing him to the custody of the Department of Mental Health. This appeal follows.

## Points on Appeal

Sohn presents two points on appeal. First, Sohn contends the probate court abused its discretion when it denied his motion in limine to exclude Dr. Griffith's report and testimony and allowed Dr. Griffith to testify about Sohn's statements made during an interview. Sohn claims the interview statements cannot be reasonably relied upon by Dr. Griffith because the interview was conducted through interpreters who repeatedly had issues understanding Sohn and who expressed concern as to whether Sohn understood the questions being presented to him. Second, Sohn claims the probate court abused its discretion in denying his motion in limine to exclude MOSOP records and allowing Dr. Griffith to testify about Sohn's statements made during MOSOP. Sohn posits that the MOSOP records also could not reasonably be relied upon by Dr. Griffith in rendering an expert opinion because it is unclear whether the statements attributed to Sohn in the records were made with the assistance of interpreters or whether Sohn actually wrote one of the statements.

## Standard of Review

A probate court's decision to allow evidence at trial is reviewed for abuse of discretion, as the determination of whether to admit evidence is within the sound discretion of the court. Elliott v. State, 215 S.W.3d 88, 92 (Mo. banc 2007). The probate court abuses its discretion only where its ruling is clearly against the logic of the circumstances and so arbitrary or unreasonable

5

as to shock the sense of justice and indicate a lack of careful consideration. Id. On appeal, this Court reviews for prejudice, not mere error. State v. Strong, 142 S.W.3d 702, 710 (Mo. banc 2004). The probate court's decision will be reversed only if the error was so prejudicial that it deprived Sohn of a fair trial. Id. Accordingly, even if an abuse of discretion is found, "we will not reverse unless the error had a material effect upon the merits of the action." In the Matter of the Care & Treatment of Wadleigh, 145 S.W.3d 434, 438 (Mo. App. W.D. 2004).

## Discussion

Missouri's SVP statute is civil in nature. Murrell v. State, 215 S.W.3d 96, 110 (Mo. banc 2007). Admission of expert testimony in civil cases is governed by Section 490.065. Section 490.065 states, in relevant part:

> The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable. Section 490.065.3

Section 490.065 requires the trial court to consider whether experts in the field reasonably rely on the type of facts and data used by the expert or if the methodology is otherwise reasonably reliable. McGuire v. Seltsam, 138 S.W.3d 718, 721 (Mo. banc 2004). If not, the testimony is inadmissible. Id. Whether expert opinion testimony satisfies the requirements of Section 490.065 is a matter of trial court discretion. Id.

Section 490.065.3 requires two analytical steps by the trial court. First, the trial court must determine whether the facts and data upon which the expert's opinion is based are reasonably relied upon by experts in the particular field. Goddard v. State, 144 S.W.3d 848, 854 (Mo. App. S.D. 2004). The trial court generally is expected to defer to the expert's assessment

6

of what facts or data are reasonably relied upon in their field. Id.;[3] Doe v. McFarlane, 207 S.W.3d 52, 62 (Mo. App. E.D. 2006). Second, the trial court must look beyond the expert's assessment of reliability to independently determine whether the facts and data on which the expert's opinion is based are "otherwise reasonably reliable." McFarlane, 207 S.W.3d at 62. An expert's opinion must be founded on substantial information, not mere conjecture or speculation, and there must be a rational basis for the opinion. Id. However, it is only in cases where the sources relied on by the expert are "so slight as to be fundamentally unsupported" that the expert's opinion should be excluded. Id.; Goddard, 144 S.W.3d at 854; see also In re Shafer, 171 S.W.3d 768, 773 (Mo. App. S.D. 2005) ("the trial court is only mandated to exclude testimony in those cases where the source upon which the expert relies is so slight as to be fundamentally unsupported"). Further, and importantly, "questions as to the sources and bases of the expert's opinion affect the weight, rather than the admissibility, of the opinion, and are properly left to the jury." McFarlane, 207 S.W.3d at 62.

## I. Dr. Griffith's Interview of Sohn

Sohn maintains that his statements made during his interview with Dr. Griffith were not reasonably reliable as required by Section 490.065.3, and thus, could not be properly relied upon by Dr. Griffith to support her expert testimony. Sohn posits that the statements could not be reasonably relied upon because the sign language interpreters present during the interview had difficulty communicating with him. Sohn also claims that Dr. Griffith failed to show a rational basis for relying on Sohn's statements as factually reliable given the interpreters' difficulty communicating with Sohn. We are not persuaded.

---

[3] "The practice of allowing an expert to testify as to facts and data of a type reasonably relied upon by experts in the field as a juridical principle, is justified by the premise that a witness with specialized knowledge is as competent to evaluate the reliability of the statements presented by other investigators or technicians as a fact-finder is to pass upon the credibility of an ordinary witness on the stand." Id.

7

Under Section 490.065, the trial court's "determination of whether the facts and data relied upon are relevant is made relative to the testimony of the expert." Murrell, 215 S.W.3d at 112. If the facts or data relied upon are both reasonably reliable and reasonably relied on by experts in the field when forming an opinion on the matter at issue, they will necessarily be relevant to the case, and testimony as to the facts and data will be admissible. Id. at 110. "Any weakness in the factual underpinnings of the expert's opinion or in the expert's knowledge goes to the weight that testimony should be given and not its admissibility." In re Shafer, 171 S.W.3d at 773.

Here, Dr. Griffith testified that her interview of Sohn was the type of information reasonably relied on by experts in the field. The probate court did not abuse its discretion in deferring to Dr. Griffith's assessment of what facts or data are reasonably reliable in her field. See McFarlane, 207 S.W.3d at 62; see also Bradshaw v. State, 375 S.W.3d 237 (Mo. App. S.D. 2012) and Walker v. State, 465 S.W.3d 491 (Mo. App. W.D. 2015) (in which the Court noted with approval the fact that expert witnesses interviewed Bradshaw and Walker as part of the SVP evaluation process).

Dr. Griffith's testimony also supported a conclusion that the interview was "otherwise reasonably reliable" and that her reliance on it was reasonable. Dr. Griffith testified that she had performed between 400 and 500 SVP evaluations, and that she had received approximately 40 hours of intensive training in working with the deaf. Dr. Griffith's interview with Sohn lasted four hours and involved two American Sign Language interpreters who were familiar with Sohn and had worked with him in the past. To ensure that Sohn understood the purpose of the interview, Dr. Griffith and the interpreters took the time and effort to explain the process to Sohn at length. Further, although Dr. Griffith noted Sohn and the sign language interpreters

8

experienced some communication issues, Dr. Griffith clarified that the misunderstandings were minor, related primarily to specific individual words, and that she was satisfied that her communication with Sohn was adequate.

The record shows that Dr. Griffith's expert opinion was founded on substantial information gleaned from a reasonably reliable source: a direct, in-depth interview with Sohn conducted with the assistance of two sign language interpreters. Dr. Griffith's interview with Sohn was not a source of information "so slight as to be fundamentally unsupported" and was therefore properly admitted into evidence by the probate court. See In re Shafer, 171 S.W.3d at 773. Sohn's challenges relating to the communication issues experienced during the interview address the strength of the factual underpinnings of Dr. Griffith's opinion rather than the reliability of the interview as a source supporting Dr. Griffith's testimony. We are mindful that "[a]ny weakness in the factual underpinnings of the expert's opinion or in the expert's knowledge goes to the *weight* that testimony should be given and *not* its admissibility." Id. (emphasis added). Such issues were properly left to the jury, as "[m]atters of credibility and weight of testimony are for the fact finder to determine." Bemboom v. State, 326 S.W.3d 857, 859 (Mo. App. W.D. 2010).

While we recognize that Sohn's disability presented certain unique challenges during his interview with Dr. Griffith, these challenges impact the weight of the evidence and not the admissibility. Dr. Griffith's testimony at trial sufficiently established that her interview with Sohn is the type of evidence reasonably relied on by experts in the field, and that the interview was "otherwise reasonably reliable." Accordingly, the probate court did not abuse its discretion in denying Sohn's third motion in limine and allowing Dr. Griffith to testify at trial about the statements made by Sohn during the interview. Point One is denied.

9

## II. MOSOP Records

In his second point on appeal, Sohn challenges the reliability of the Sohn's MOSOP records under the requirements of Section 490.065.3, and argues that it was improper for Dr. Griffith to rely upon these records in support of her expert testimony. Sohn avers that certain statements and information contained within his MOSOP records were not reasonably reliable because Sohn may not have been assisted by an interpreter at the time he wrote some of the statements, including the victim disclosure report. As a corollary to this argument, Sohn reasons that Dr. Griffith could not have had a rational basis for relying on the MOSOP records as factually reliable because of the significant questions about Sohn's comprehension of his treatment while he participated in MOSOP. Again, we are not persuaded.

As noted above, the trial court's "determination of whether the facts and data relied upon are relevant is made relative to the testimony of the expert." Murrell, 215 S.W.3d at 112. If the facts or data relied upon are both reasonably reliable and reasonably relied on by experts in the field when forming an opinion on the matter at issue, they will necessarily be relevant to the case, and testimony as to the facts and data will be admissible. Id. at 110. "Any weakness in the factual underpinnings of the expert's opinion or in the expert's knowledge goes to the weight that testimony should be given and not its admissibility." In re Shafer, 171 S.W.3d at 773.

Here, Dr. Griffith testified that the MOSOP records were the type of evidence reasonably relied on by experts in the field. Moreover, we note that Dr. Griffith was not alone in her assessment of the MOSOP records as each of the additional three expert witnesses testified that MOSOP records were reasonably relied on by experts in their field. We are unwilling to conclude that the probate court abused its discretion in deferring to Dr. Griffith's assessment of what facts or data are reasonably reliable in her field. See McFarlane, 207 S.W.3d at 62. See

10

also Amonette v. State, 98 S.W.3d 593 (Mo. App. E.D. 2003) (in which this Court held there was sufficient evidence to support a finding that Amonette was an SVP, based in part on the testimony of an expert witness who reviewed Amonette's file and records, including his MOSOP records, and testified that such evidence was reasonably relied upon by experts in the field).

Dr. Griffith's testimony as to the contents of the MOSOP records also supports a conclusion that the MOSOP records were "otherwise reasonably reliable" and that her reliance on them was reasonable. Dr. Griffith testified that the MOSOP records she relied upon in forming her opinion included written documents authored by Sohn, including a victim disclosure report in which Sohn "[made] an account of all of [his] victims." The MOSOP records Dr. Griffith relied upon also included a "relapse prevention plan where the offender comes up with strategies to avoid offending and any insights they have into their dynamics of re-offending." Dr. Griffith testified that such records and documents are completed by all offenders participating in MOSOP.

Dr. Griffith's expert opinion was founded on substantial information gleaned from a reasonably reliable source: MOSOP records and documents written by Sohn. The MOSOP records were not a source "so slight as to be fundamentally unsupported" and were therefore properly admitted into evidence by the probate court. See In re Shafer, 171 S.W.3d at 773. Again, any arguments that Sohn may not have had the assistance of an interpreter when writing the victim disclosure report, or at Sohn had issues comprehending his treatment under MOSOP, address the strength of the factual underpinnings of Dr. Griffith's opinion rather than the reliability of the MOSOP records as a source supporting Dr. Griffith's testimony. As explained, "[a]ny weakness in the factual underpinnings of the expert's opinion or in the expert's

11

knowledge goes to the *weight* that testimony should be given and *not* its admissibility." Id. (emphasis added). These issues were properly left to the jury.[4] Bemboom, 326 S.W.3d at 859.

Again, while Sohn's disability presented challenges to his participation in MOSOP, any such challenges properly go to the weight of the evidence and not its admissibility. Dr. Griffith's testimony at trial unequivocally established that MOSOP records are the type of evidence reasonably relied on by experts in the field, and that these records, including the statements written by Sohn, are "otherwise reasonably reliable." Accordingly, the probate court did not abuse its discretion in denying Sohn's sixth motion in limine and allowing Dr. Griffith to testify about the MOSOP records at trial. Point Two is denied.

Conclusion

The judgment of the probate court is affirmed.

KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Patricia L. Cohen, J., concurs.

---

[4] We note that while there was no evidence that there was an interpreter present when Sohn wrote the victim disclosure report, there was no evidence that an interpreter was not present to assist Sohn. Nor was there any evidence that Sohn required an interpreter in order to prepare a written statement. Regardless, as explained above, these considerations address the weight of the evidence and were properly left for the jury's determination.

12